IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHLEEN SUSAN STIPE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-CV-1010-SMY |
| | ) |
| SOUTHERN ILLINOIS UNIVERSITY OF | ) |
| EDWARDSVILLE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Kathleen Susan Stipe alleges that Defendant Southern Illinois University of Edwardsville ("SIUE")[1] discriminated against her on account of her disability, failed to reasonably accommodate her needs, and retaliated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") by moving her workstation.

Pending before the Court is SIUE's Motion for Summary Judgment (Doc. 61). Plaintiff has not filed a response.[2] For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

### Background[3]

Plaintiff Kathleen Stipe suffers from cartilage-hair hypoplasia dwarfism, spinal stenosis,

---

[1] SIUE notes that its correct name is Board of Trustees of Southern Illinois University Governing Southern Illinois University Edwardsville.

[2] On September 1, 2020, Plaintiff emailed two documents to the undersigned that purported to be responses to Defendant's Motion. Plaintiff was informed that sending an email to the undersigned does not constitute filing with the Clerk of Court and she was directed to file her responses. As of the date of this Order, no response has been filed. The Court declines to construe Plaintiff's lack of response as an admission of the merits of the motion pursuant to Local Rule 7.1(c).

[3] All facts are taken in a light most favorable to Plaintiff as the nonmoving party. *National American Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 722-23 (7th Cir. 2015).

scoliosis, degenerative arthritis, and leg length discrepancy. She began employment as an Office Support Associate for the University Housing Facilities Management Commission at SIUE on December 1, 2014 (Doc. 63-2, p. 7). Stipe was the only Office Support Associate in this 4-person office and her duties included being the first person in the office (at 6:00 a.m.) (*Id*. 20, 28, 39-40; Doc. 63-40). During the relevant period, Stipe's immediate supervisor was Housing Officer Kim Watson and Michael Schultz, the Director of University Housing, was the head of the department and overall supervisor.

For three years, Stipe worked in a cubicle in the inner office, which accommodated her physical needs (Doc. 63-2, pp. 23-24).[4] In April or May 2017, Watson decided to move her location to the outer office, in part to greet visitors as they entered the office (functions that had been performed by students in the past). (*Id*. 53-4; Doc. 63-1, p. 11). On May 1, 2017, Stipe e-mailed SIUE's Director of Equal Opportunity, Access, and Title IX Coordination, Chad Martinez, and told him the proposed desk space/equipment in the new location did not accommodate her needs and requested that her current desk setup relocated in the new space (Doc. 63-6). After a discussion with Stipe, Martinez emailed her on June 7, 2017: "[t]he move will be made after the new workspace is modified to closely resemble your current workspace in terms of desktop space and height. This does not mean that the new workspace will be exactly the same, but similar and allowing the same functionality" (Doc. 63-7). In September and October 2017, Stipe and Watson discussed the type of office furniture that would accommodate her needs and looked at new furniture (Doc. 63-2, pp. 37-38; Doc. 63-1, p. 3).

On November 28, 2017, Watson advised Stipe that her new workstation would be functional by the following morning (Doc. 63-1, p. 3). Through various email exchanges with

---

[4] The record does not reflect Plaintiff's exact physical requirements as they relate to her medical conditions.

Watson, Schultz and Martinez in late November 2017, Stipe indicated that she did not want to move to the new location because she believed it was unnecessary, did not accommodate her physical needs, and did not have the equipment necessary to perform her job duties (Doc. 63-12; 63-15). Stipe did not work at her new desk on November 29, 2017 and on November 30, 2017, she was issued a Notice of Pre-disciplinary Hearing for "alleged insolent behavior/failure to follow a management directive" (Doc. 63-16). The next day, Stipe was placed on leave without pay because her "continued refusal to report to [her] assigned work station and [ ] refusal to perform [ ] assigned duties" was interfering with Defendant's operations (Doc. 63-17). Stipe was issued a second Notice of Pre-disciplinary Hearing on December 4, 2017 for "alleged insolent and disruptive behavior/failure to follow a management directive" as a result of the December 1, 2017 placement on leave without pay (Doc. 63-18).

On December 7, 2017, Stipe appeared at the first pre-disciplinary hearing with a union representative and was directed to report to work or be charged with abandoning her job (Doc. 63-2, p. 74-5). That evening, she emailed Schultz demanding an ergonomic study. She also listed problems with her workstation including an unreachable counter, a keyboard tray that could not be manipulated or moved, and proximity to the front door (from which cold air would blow on her) (Doc. 63-19). In response to Stipe's email, Defendant arranged for a carpenter to adjust the keyboard tray so that it moved and could be manipulated (Docs. 63-1, p. 3; Doc. 63-20).

Stipe returned to work on December 8, 2017 but believed her workstation was unavailable because the carpenter was there adjusting the keyboard tray. She left work even though there was an area near her workstation where she could wait until the carpenter was done (he finished at 8:00 a.m.) (Doc. 63-2, pp. 77-79; Doc. 63-1, p. 21).

Stipe next reported to work on December 11, 2017. On that day, she sent a memo to

Watson, Schultz and Martinez with a supplemental list of acceptable "proposed accommodations" including: (1) a keyboard tray that lined up with monitors; (2-3) monitors/keyboard tray that didn't shake when typing; (4) a typewriter that stayed plugged in; (5) space for paperwork; (6) space to write; (7-8, 10) a phone and shelf that can be reached while sitting at keyboard; (9) closer proximity to coworkers; and (11) monitors that can be viewed from keyboard tray location (Doc. 63-21). This list was supplemented with (1) computer monitors placed on a desk and not on a shelf; (2) writing space; (3) a fixed desk (without wheels); (4) a way to block cold air like a glass window or door; (5) secure storage for her purse and belongings; (6) human resources files located in her workspace so she doesn't have to "walk twice as far to work with the files." She also reported problems she encountered in the reception office. (*Id.*).

Stipe informed Defendants that she had an unrelated court hearing in Jersey County, Illinois on December 12, 2017 and therefore could not attend the second pre-disciplinary hearing scheduled for that date. Instead of seeking administrative leave or vacation time, Stipe requested sick leave. She testified that she was in fact sick but attended the court hearing at 1:00 p.m. because it could not be moved (Doc. 63-2, pp. 101-2). This resulted in a third Notice of Pre-Disciplinary Hearing (Doc. 63-25). On January 24, 2018, she was issued a "written warning" for violating Defendant's rules on unauthorized and unexcused absences (Doc. 63-28).

On December 19, 2017, Stipe appeared at the hearing on her second Notice of Pre-Disciplinary Hearing. The following day, she met with Watson, Schultz, and Martinez to discuss accommodations and they agreed on a list of 5 mutually agreeable accommodations (Doc. 63-1, p. 4; Doc. 63-2, pp. 109-10): (1) Keys that are not placed on the top three rows of a key cabinet; (2) "temporary padding or relocation of the brace at the counter space"; (3) replacing a vertical cabinet with a locking horizontal cabinet for work files and personal items; (4) a work desk with particular

measurements; and (5) moving a typewriter from a back to a forward counterspace (Doc. 63-22). As a result of the hearing on the second Notice of Pre-disciplinary Hearing, Stipe was issued a "Final Written Warning" on January 5, 2018 for her "continued violation" of various directives issued from June to December 8, 2017 (Doc. 63-27).

Stipe filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on December 24, 2017 in which she stated:

> One of my job responsibilities is payroll. I August 2017, I reported that one of the employees was abusing the time and attendance policy by not reporting all of their leave taken. I was told by management to leave the issue alone and it would be handled. I noticed that it was not handled and was told that if I did not let it go, I would be disciplined. On November 29, 2017, I was informed that my workstation was being relocated from an office to the reception area. I protested because my workstation in the office was specifically designed for my disability as a reasonable accommodation in April 2015. I reported to work on November 30, 2017, and my old workstation computers were disassembled and the new workstation in the reception area did not have any of the accommodations I needed function [sic]. I complained and refused to work at the new workstation. I have been made to attend five disciplinary hearings connected to this failure to accommodate. I believe I was moved in retaliation for reporting the time and attendance abuse. I was told that if did not work at the new workstation, I would be disciplined and possibly terminated. Respondent failed to properly accommodate my disability in their rush to move me out of the office. I cannot properly perform all of my daily tasks. Respondent continues to harass me by threatening me with disciplinary action.

(Docs. 63-2, p.9; 63-37). A Right to Sue letter was issued by the EEOC on January 18, 2018 (Doc. 63-38).

By March 2018, Defendants had made the modifications that were agreed to on December 20, 2017 but Stipe was not satisfied with these changes (Doc. 63-1, p. 4; 63-5, p. 3). On March 1, 2018, she again complained of cold air from the front door which was left open (a sign was placed on the door in response) and from a vent which was subsequently covered (Doc. 63-1, p. 4; 63-30; 63-31). On March 6, 2018, Stipe sent an email to Schultz stating that her desk and file drawer were not acceptable and seeking other accommodations including a file drawer that would be

attached to her desk instead of freestanding, rounded corners on her desk, an additional file cabinet, and overhead storage space that she would not have to walk to in order to access (Doc. 63-32). Additional emails were exchanged in which Stipe complained of the lack of space for personal items and papers and expressed her intention to maintain possession of her old workstation until her needs were met (Doc. 63-33).

Stipe received a fourth Notice of Pre-Disciplinary Hearing on April 6, 2018 for again refusing to remove her items from her old workstation and other behavior including spreading her paperwork on the floor of her workstation to demonstrate lack of counter space (Doc. 63-35). Following a hearing on the fourth Notice, Stipe was issued a "Final Written Warning" and suspended for 3 days without pay beginning on April 25, 2018 (Doc. 63-36). Stipe's employment was ultimately terminated on August 29, 2019 after a hearing before Defendant's Civil Service System (Doc. 63-39). The stated reasons for termination were misuse and falsification of time reporting, sick leave, leave accrual, vacation leave, unethical conduct, misconduct, unprofessional conduct, and insolence (*Id*. 19).

Stipe filed the instant lawsuit *pro se* on April 23, 2018. In the Complaint, she claims that her new workstation did not accommodate her physical needs and also alleges that she was harassed by her supervisors, that she was treated differently than other employees, that she lost internal job opportunities because of damage to her reputation caused by her supervisors, and that she was denied reassignment to other positions in retaliation (Doc. 2). In a "More Definite Statement" (filed pursuant to court order), she reiterates her failure to accommodate claim (as it relates to her workstation moving) and alleges that she was disciplined in retaliation for seeking accommodations, that she was discriminated against when she sought reassignment to different positions, and claims extreme emotional distress (Doc. 31).

**Discussion**

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact or where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Defendant first argues that Stipe's claims must be limited to those made in her EEOC Charge and only for events that took place prior to January 18, 2018. In her Charge, Stipes claimed that she was retaliated against for complaining about violations of Defendant's time and attendance policies, that her disability was not accommodated at her new workstation, that after she complained she was subjected to disciplinary action (i.e. retaliation), and that she was being harassed with additional disciplinary actions.

It has long been established that "claims brought in judicial proceedings must be within the scope of the charges filed with the EEOC; an aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (quotation marks and citation omitted). Claims that are "reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised" are considered within the scope of an EEOC Charge. *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 897-8 (7th Cir. 1999). Reasonably related claims are those that are factually related, i.e., "describe

the same conduct and implicate the same individuals." *Whitaker v. Milwaukee County, Wisconsin*, 772 F.3d 802, 812-3 (7th Cir. 2014) (quotation marks, citation, and emphasis omitted). Thus, failure to accommodate claims are distinct from discriminatory treatment claims and must be separately alleged in a charge. *Green*, 197 F.3d at 898.

While a plaintiff is required to file a Charge of discrimination within 300 days of an alleged unlawful practice, 42 U.S.C. § 12117(a); 42 U.S.C. § 20003-5, Defendant cites no legal authority that would limit Stipe to only those occurrences prior to the date of a right to sue letter. In her Charge, she alleged an on-going failure to accommodate claim in addition to retaliation and harassment. As such, she is not limited in her proof to merely events that occurred prior to her right to sue letter. *Cheek v. Western and Southern Life Ins. Co.*, 31 F3d 497, 500 (7th Cir. 1994) (stating that a plaintiff is not required to set forth "every fact that combines to form the basis of each claim in her complaint" in the EEOC charge). The entirety of her failure to accommodate claim relates to the same change in office location, implicates the same people, and concerns the same conduct. Therefore, the events that occurred after January 18, 2018 regarding her new workstation and lack of accommodations are within the scope of her Charge of discrimination.

That said, Defendant correctly contends that the record does not support an ADA retaliation claim related to Stipe's initial move to the new workstation. To prevail on an ADA retaliation claim, Stipe must show that she engaged in statutorily protected activity, that she suffered an adverse employment action, and that there is a but for causal connection between the two. *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). There is no showing that Stipe's complaints about other employees' violations of Defendant's policies is a statutorily protected activity. Therefore, this claim of retaliation fails as a matter of law. Moreover, to the extent Stipe alleges that she was terminated or that she was denied job

transfers/reassignment because of her disability (i.e. discriminatory treatment) or in retaliation, these claims also fail as a matter of law because they were not raised in her Charge or reasonably related to the claims asserted in her Charge.[5] [6]

Next, Defendant argues that Stipe's failure to accommodate claim fails as a matter of law because she refused to participate in an ADA interactive process and because she was given reasonable accommodations. To prevail on her failure to accommodate claim, Stipe must show that (1) she is disabled; (2) Defendant was aware of her disability; and (3) she "was a qualified individual who, with reasonable accommodation, could perform the essential functions of the employment position." *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). The ADA defines a disability as either "a physical or mental impairment that substantially limits one or more major life activities"; "a record of such an impairment"; or "being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also* 29 U.S.C. §705(9)(b) (referring to the ADA in defining "disability" as used in the Rehabilitation Act).

It is undisputed that Stipe is disabled, that Defendant was aware of her disability, and that she could perform the essential functions of her job with reasonable accommodations. Federal Regulations describe a reasonable accommodation as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held . . . . is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position. . . ." 29 C.F.R. § 1630.2(o)(1)(ii). An employee and employer are

---

[5] Defendant's argument that Plaintiff should be barred from "claim splitting" because she has filed a complaint in state court challenging the termination of her employment is misplaced. In this case, Plaintiff's termination and the reasons thereof are not mentioned in or a part of Plaintiff's Complaint.

[6] Plaintiff's Charge also states that Defendant failed to accommodate her disabilities when it moved her workstation *and that she was subjected to discipline when she complained about the lack of accommodations.* This is the very same claim that she makes in her more definite statement (Doc. 31, p. 4). Defendant does not address this particular claim of retaliation.

required to engage in an informal "interactive process" which "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). An employer is not required to provide every accommodation an employee requests but rather must provide "an accommodation that effectively accommodates the disabled employee's limitations." *E.E.O.C.*, 417 F.3d at 802.

"If a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the breakdown of the interactive process." *Id.* (citing *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996). "Courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Beck*, 75 F.3d at 1135. Here, the parties appeared to engage in the interactive process in good faith until November 28, 2017. However, a reasonable jury could find that the interactive process was stymied by Plaintiff's apparent desire to cease employment and continued intransigence (she mentioned on separate occasions that she either wanted to leave her job or that modifications to her workspace were pointless) and Defendant's initiation of disciplinary proceedings because she would not move.

According to Plaintiff's version of events, Defendant elected to move her arbitrarily after accommodating her needs for 3 years. When she challenged the move and told them that the new space was not appropriate, they started to engage in an interactive process. However, when

Defendant's suggestions were not acceptable to Plaintiff, she refused to move to a non-accommodating workspace. At that point, Defendants elected to issue, in rapid succession, two disciplinary actions that resulted in a forced leave without pay. Thereafter, the parties continued to discuss the necessary accommodations – all while Plaintiff was being issued additional disciplinary processes and subjected to disciplinary hearings. Indeed, Martinez's June 7, 2017 assurance that the new workspace would be "similar and allowing the same functionality" as her old workspace did not materialize until March the following year. *Vande Zande v. State of Wisc Dep't of Admin.*, 44 F.3d 538, 546 (7th Cir. 1995) ("The duty of reasonable accommodation is satisfied when the employer does what is necessary to enable the disabled worker to work in reasonable comfort.").[7] On these facts, a jury could reasonably conclude that while Stipe may have refused "to participate or withhold essential information," Defendant also did not take "an active, *good-faith* role in the interactive process" by initiating disciplinary proceedings. *E.E.O.C.*, 417 F.3d at 806 (emphasis added); *See e.g. Sansone v. Brennan*, 917 F.3d 975 (7th Cir. 2019). Therefore, summary judgment on Stipe's failure to accommodate claim would be improper.

Finally, Defendant correctly argues that Stipe cannot prevail on her disparate treatment claim. Because she did not assert a disparate treatment claim in her Charge, she cannot pursue such a claim in this case. Defendant's motion for summary judgment is therefore granted on this point.

---

[7] Defendant argues that Plaintiff's requests for accommodations were merely "personal preferences unrelated to her disability or pretextual excuses to justify a demand to return to her old workstation." Missing from Defendant's brief, however, is a list of the reasonable accommodations they had provided to Plaintiff at her old workstation and how the new workstation was similarly accommodating. Certainly, Plaintiff's request for a locked drawer to put her personal items in does not appear related to a disability, but her request for rounded corners, shorter walking distances, line-of-sight to monitors, etc. may be related to her disability and needs. The record is simply bereft of any indication of which of Plaintiff's requests for accommodation are related to her disability and therefore an assessment of the reasonableness of those accommodations is impossible on the record before the Court.

**Conclusion**

For the above reasons, Defendant's Motion for Summary Judgment is **GRANTED in part.** Judgment is granted in favor of Defendant on Stipe's ADA retaliation claim with respect to the initial move in workstation, discriminatory treatment and retaliation claim as to termination or job transfers/reassignments, and disparate treatment claim. Defendant's Motion is **DENIED** in all other respects. This matter is set for a telephonic status conference on **February 17, 2021 at 9:30 a.m.** to set a trial date. The instructions for joining the conference call are as follows: All parties should call toll free 877-873-8017 and enter the access code 4354777. Then when prompted, enter security code 1010.

**IT IS SO ORDERED.**

**DATED: February 4, 2021**

**STACI M. YANDLE**
**United States District Judge**